UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ANTHONY M. GRIFFIN,<br><br>       Plaintiff,<br><br>    vs.<br><br>JEREMY WINTLE,<br><br>       Defendant | Civil No. 15-00435-GZS |

## **DEFENDANT JEREMY WINTLE'S FINAL PRETRIAL MEMORANDUM**

Pursuant to Local Rule 16.4(b), Defendant Jeremy Wintle hereby submits the following as a Final Pretrial Memorandum:

### I.  FACTUAL STATEMENT

The dispute in this case arises out of an incident that occurred at the Penobscot County Jail on January 25, 2015. Defendant Jeremy Wintle, a Corrections Officer at the Penobscot County Jail, was assisting a nurse dispense medications in Plaintiff Anthony Griffin's housing unit just prior to the incident. After Mr. Griffin received his medications, Officer Wintle ordered Mr. Griffin to return to his cell and close the door. Mr. Wintle concedes that he did not comply with Officer Wintle's order. Officer Wintle approached Mr. Griffin's cell and directed Mr. Griffin to go inside and close the door. When Mr. Griffin again failed to comply, Officer Wintle attempted to close the cell door. Mr. Griffin grabbed the door and prevented it from closing. After struggling with Mr. Griffin over the door, Officer Wintle entered the cell and directed Mr. Griffin to a seat on his bunk. Officer Wintle ordered Mr. Griffin to remain on his bunk until the door was secured. Rather than comply, Mr. Griffin charged the door with clenched fists and prevented Officer Wintle from leaving. Mr. Griffin then grabbed Officer Wintle's shirt. Officer Wintle responded by escorting Mr. Griffin to the ground and handcuffing him.

## II.     CONTROVERTED POINTS OF LAW

The Court has interpreted Mr. Griffin's pleadings to state two claims: a use of force claim under the Fourteenth Amendment and asserted pursuant to 42 U.S.C. § 1983; and a tort claim of assault. Therefore the controverted issues include:

A.     Whether Officer Wintle used excessive force in taking control of Mr. Griffin? Since it appears that Mr. Griffin was a pretrial detainee at the time of the incident in this case, the use of force claim under 42 U.S.C. § 1983 is measured by the Fourteenth Amendment standard articulated by the United States Supreme Court in *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 192 L. Ed. 2d 416 (2015). The Fourteenth Amendment's "Due Process Clause protects a pretrial detainee from the uses of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). To establish such a due process violation, a detainee must show that the defendant "deliberate[ly] — i.e. purposeful[ly] or knowing[ly]" — used force against him that was "objectively unreasonable." *See Kingsley*, 135 S.Ct. at 2473.

There is no dispute that Officer Wintle purposefully or knowingly used force to gain control of Mr. Wintle. However, the evidence will show that prior to the alleged use of force Mr. Griffin disobeyed several lawful orders by Officer Wintle, became physically combative with Officer Wintle, and assaulted Officer Wintle. Officer Wintle used only the amount of force that was reasonably necessary to control Mr. Griffin. Therefore, Officer Wintle's use of force was objectively reasonable.

B.     Whether Officer Wintle is entitled to qualified immunity for some or all of the Plaintiffs' alleged claims?  Given Mr. Griffin's conduct – including his assault on Officer Wintle and her failure to cooperate with his orders – Officer Wintle is protected by qualified immunity. Qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The qualified immunity analysis encompasses two inquiries. The first is "whether the facts alleged or shown by the plaintiff make out a violation of

a constitutional right," and the second is "whether the right was 'clearly established' at the time of the defendant's alleged violation." *Stamps v. Town of Framingham*, 813 F.3d 27, 34 (1st Cir. 2016) (quoting *Mlodzinski v. Lewis*, 648 F.3d 24, 32 (1st Cir. 2011)). The second prong itself consists of two questions: "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable [official] would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable [official] would have understood that his conduct violated the right." *Id.* (quoting *Mlodzinski*, 648 F.3d at 32-33). Based on the facts of this case, a reasonable officer in Officer Wintle's position could have believed that his conduct was lawful. Therefore, he is protected by qualified immunity.

      C.      Whether Mr. Griffin is foreclosed from presenting expert opinion testimony in support of his claim for damages given his failure to serve Officer Wintle with an expert disclosure required by the Court's Scheduling Order? The Scheduling Order required that Mr. Griffin serve Officer Wintle with an expert designation on or before July 27, 2016. Mr. Griffin did not comply with this requirement and has never served Officer Wintle with any designation. Pursuant to Federal Rule of Civil Procedure 37(c)(1), Mr. Griffin should not be allowed to present expert opinion testimony with regard to any physical or mental injuries he is claiming.

      D.      Whether the Plaintiff's tort claim is barred by failure to provide the required statutory notice? The incident in this case occurred on January 25, 2015. Officer Wintle was acting as an employee of Penobscot County at the time of the incident. Therefore, pursuant to 14 M.R.S. § 8107, Mr. Griffin was required to serve Penobscot County with a notice of claim on or before July 24, 2015. Mr. Griffin did not serve a notice on or before that date. As a result of his failure in this regard, he is precluded from asserting any tort claims against Officer Wintle.

      E.      Whether the Plaintiff's tort claim is barred by discretionary function immunity? A governmental employee is absolutely immune from tort claims that arise out of the exercise of discretionary functions. In *Roberts v. State*, 1999 ME 89, 731 A.2d 855, the Law Court applied

discretionary function immunity to reject an assault claim that an inmate asserted against a corrections officer. The plaintiff in *Roberts* alleged that he was injured when a prison guard closed a cell door on his hand, severing a finger. In deciding that the alleged conduct fell within the ambit of discretionary function immunity, the Law Court reasoned as follows:

> [C]orrections is a basic governmental program and that the supervision of inmates is essential to a corrections program. The supervision necessarily involves the exercise of judgment by corrections officers, including the discretionary decision of when to order an inmate to his cell. That discretionary decision also includes the shutting of a cell door when the prisoner has failed to shut it or the door has failed to shut. Allenwood had the lawful authority to supervise Roberts. The four-factor test compels the conclusion that Allenwood's alleged tortious acts were performed as part of a discretionary function. Therefore, both the State and Allenwood are immune from liability on Roberts' claim that his injury resulted from Allenwood's action in shutting the cell door.

*Id.* ¶ 10, 731 A.2d at 857-58. Moreover, both the Law Court and the United States District Court for the District of Maine have held that "[t]he management and care of prisoners is a discretionary function." *Erskine v. Commissioner of Corrections*, 682 A.2d 681, 686 (Me. 1996) (citing *Ellis v. Meade*, 887 F. Supp. 324, 331 (D. Me. 1995)); *see also Ellis*, 887 F. Supp. at 331 ("The Court is satisfied that the management and care of prisoners is more than a ministerial function. It requires the use of an officer's judgment. Accordingly, the Court concludes that such activity constitutes the carrying out of a discretionary function."). Officer Wintle's actions in controlling a non-compliant and combative inmate are protected by discretionary function immunity.

   F. What are the Plaintiff's damages, if any, proximately related to the incident?

   G. Whether the Plaintiff has mitigated his damages? "In a § 1983 case the plaintiff has a duty to mitigate damages." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994) (citing *Rolfe v. County Bd. of Educ.*, 391 F.2d 77, 81 (6th Cir. 1968)). To the extent Mr. Wintle is permitted to present medical evidence at trial (and Officer Wintle believes he should not), Officer Wintle believes Mr. Griffin's medical records reflect a failure to mitigate his damages.

III. **PROPOSED STIPULATIONS**

A. Copies may be used in lieu of originals.

IV. **WITNESSES**

A. Jeremy Wintle;

B. Shane Richard, c/o Penobscot County Jail, 85 Hammond Street, Bangor, ME 04401;

C. Dennis Davis, c/o Penobscot County Jail, 85 Hammond Street, Bangor, ME 04401;

D. Gary Huff, c/o Penobscot County Jail, 85 Hammond Street, Bangor, ME 04401;

E. Daniel Day, c/o Penobscot County Jail, 85 Hammond Street, Bangor, ME 04401;

F. Cpl. Leslie Chauvin, c/o Penobscot County Jail, 85 Hammond Street, Bangor, ME 04401;

G. William Collins, c/o Penobscot County, 97 Hammond Street, Bangor, ME 04401;

H. Brian Goodness, current address unknown;

I. Witnesses necessary to authenticate documents used as exhibits, if necessary, including but not limited to, persons to authenticate Plaintiff's medical records; and

J. Any of the witnesses listed by any other party.

The Defendant reserves the right to supplement this list with reasonable notice to the other parties. The Defendant further reserves the right to call any witnesses designated by any of the other parties. Witnesses presented to offer rebuttal testimony or impeachment testimony are not necessarily listed.

V. **EXHIBITS**

A. Penobscot County Jail records pertaining to Plaintiff;

B. Aroostook County Jail records pertaining to Plaintiff;

C. Plaintiff's criminal history records;

D. Records pertaining to Plaintiff's criminal convictions;

E. Plaintiff's medical records produced in discovery;

F. Deposition of Anthony Griffin, with exhibits;

G. Plaintiff's Interrogatory Answers;

H. Plaintiff's Response to Request for Production;

I. Declarations to confirm the authenticity of documents;

J. All documents exchanged or used during discovery; and

K. Any documents listed by any other party.

By identifying these potential exhibits, the Defendant does not stipulate to their admission and he reserves the right to assert appropriate objections. The Defendant reserves the right to supplement this list with reasonable notice to the other parties. The Defendant further reserves the right to offer any exhibits listed by any of the other parties. Exhibits to be offered for rebuttal or impeachment purposes are not necessarily listed.

Dated at Portland, Maine this 24th day of March, 2017.

>
> Attorneys for Defendant Jeremy Wintle
> MONAGHAN LEAHY, LLP
> 95 Exchange Street, P.O. Box 7046
> Portland, ME 04112-7046
> (207) 774-3906
> BY:   /s/ John J. Wall, III
>        John J. Wall, III

## CERTIFICATE OF SERVICE

      I hereby certify that on March 24, 2017, I electronically filed **Defendant Jeremy Wintle's Final Pretrial Memorandum** using the CM/ECF system, which will effect service on all registered parties of record.  In addition, I hereby certify that I have served a copy of this document on the Plaintiff by first class mail, postage prepaid, to the following address:

      Anthony M. Griffin (#98914)  
      Maine State Prison  
      807 Cushing Rd  
      Warren, ME 04864

Dated at Portland, Maine this 24th day of March, 2017.

      Attorneys for Defendant Jeremy Wintle  
      MONAGHAN LEAHY, LLP  
      95 Exchange Street, P.O. Box 7046  
      Portland, ME 04112-7046  
      (207) 774-3906

BY:   /s/ John J. Wall, III  
       John J. Wall, III